FILED
United States Court of Appeals
Tenth Circuit

**January 14, 2016**

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JAIMIN YOUNG MUSE,

Defendant - Appellant.

No. 15-1325
(D.C. No. 1:12-CR-00103-WYD-1)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **GORSUCH**, **McKAY**, and **BACHARACH**, Circuit Judges.

---

After examining the briefs and the appellate record, this panel has

determined unanimously to honor the parties' request for a decision on the briefs

without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). This case

is therefore ordered submitted without oral argument.

Defendant Jaimin Muse appeals the ten-month sentence imposed by the

district court after revocation of his supervised release. Specifically, Defendant

contends the district court imposed a sentence at the top of the advisory

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

guidelines range based on impermissible considerations relating to Defendant's race and the possible rehabilitative effect of incarceration. Because Defendant did not raise these arguments below, we review only for plain error. *See United States v. Ruby*, 706 F.3d 1221, 1225 (10th Cir. 2013).

In 2012, Defendant pled guilty to possession of a firearm as a prohibited person in violation of 18 U.S.C. § 922(g)(1). After serving an eighteen-month term of incarceration, he began serving a three-year term of supervised release. Over the next several months, Defendant committed numerous violations of the terms of his release, despite the probation office's exhaustive efforts to help him address his drug addiction problems and numerous warnings regarding the possible results of violating the terms of his release. In May 2015, a probation officer finally filed a petition for issuance of a warrant for violation of supervised release. Defendant subsequently admitted to twelve separate violations of the terms of his release.

At the sentencing hearing, the district court first stated that, in light of Defendant's numerous violations and consistent disregard of the probation office's admonitions, he did not understand why the probation department was recommending a bottom-of-the-guidelines sentence of seven months instead of a top-of-the-guidelines sentence of ten months. The district court judge questioned the probation officer, the prosecutor, and the defense attorney, then conducted an extensive colloquy with Defendant. The judge expressed concerns about

-2-

Defendant's attitude, stating he believed Defendant's words and actions demonstrated deceitfulness and hypocrisy instead of any kind of commitment to stopping his unlawful behaviors. In response to Defendant's statement that he kept violating his probation because dealing with a drug addiction is hard, the judge told Defendant that any achievement is hard, including the judge's own achievement of being the first African American judge in the history of Colorado, and Defendant would need to work hard if he was going to be more than just another statistic. The judge told Defendant that "men of color"—like both the judge and Defendant—face more difficulties than similarly situated white men, and he is disappointed when racial minorities make excuses for underachieving instead of working harder to overcome their challenges. (Sentencing Tr. at 21.) The judge then recommended Defendant take his ten-month period of incarceration to figure out who he was and whether he intended to keep going down the path of ruination. In doing so, the judge specifically noted for the record that his challenge for Defendant to turn his life around had no real relationship to the sentence he would impose. The judge also expressed significant doubt as to whether Defendant would actually listen to his advice and change his behavior. The judge then told Defendant, "[Y]ou need to have a 10-month sentence because you don't deserve a day less," and he noted again that the probation office had shown extreme—and perhaps counterproductive—forbearance in the way it dealt with Defendant's repeated

violations.  (*Id.* at 31.)

On appeal, Defendant quotes certain passages from the sentencing transcript and argues those comments show that the district court impermissibly based his sentence on considerations of rehabilitation and race.  For instance, Defendant argues the judge's statement that he was imposing a ten-month sentence because Defendant "need[ed] to sit for a while" to think about his life choices demonstrates the judge selected a longer sentence for purposes of rehabilitating Defendant.  (*Id.*)  Similarly, Defendant argues the judge's statements about his and Defendant's status as racial minorities demonstrates that the judge would not have imposed a ten-month sentence were it not for Defendant's race.

Having reviewed the entire sentencing transcript in context, however, we are not persuaded the district court's sentencing decision was based on impermissible considerations of rehabilitation or race.  While the judge's advice to Defendant referred to his hopes for rehabilitation and his concerns about the lack of accountability shown by many young men of color, the record makes clear that the sentencing decision itself was based on permissible considerations relating to Defendant's unrepentant attitude and his continued violations despite the probation office's numerous attempts to help him address his drug addiction problems.  Particularly under the applicable plain error standard of review, we are not persuaded that the district court's editorial comments reflect any reliance on

-4-

impermissible considerations in the sentencing decision.

We accordingly **AFFIRM** the district court's decision.

Entered for the Court


Monroe G. McKay
Circuit Judge